United States District Court
Southern District of Texas
**ENTERED**
August 21, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **FRANK YOUNG,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:23-cv-2138** |
| | § | |
| **MARTIN O'MALLEY,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Plaintiff Frank Young ("Plaintiff") filed this lawsuit against Defendant Martin O'Malley ("Commissioner") seeking review of the denial of benefits under Title II of the Social Security Act. (ECF No. 1).[1] Pending before the Court are the Parties' cross-motions for summary judgment. (ECF Nos. 12, 14).[2] Based on a review of the motions, arguments, and relevant law, the Court **RECOMMENDS** Commissioner's Motion for Summary Judgment (ECF No. 12) be **GRANTED** and Plaintiff's Motion for Summary Judgment (ECF No. 14)

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. O'Malley is "automatically substituted" as the defendant in this suit. FED. R. CIV. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] On April 29, 2024, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (ECF No. 18).

be **DENIED**.  The Court **FURTHER RECOMMENDS** the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED WITH PREJUDICE**.

## I.   Background

Plaintiff filed a Title II claim for a period of disability and disability insurance benefits on January 5, 2021, alleging disability starting on April 12, 2016.  (ECF No. 7-3 at 74; ECF No. 7-4 at 36).[3]  Plaintiff's claims were initially denied by the Social Security Administration on August 3, 2021, and again on reconsideration on November 16, 2021.  (ECF No. 7-4 at 36).  On April 21, 2022, Plaintiff consented to appear and testify via telephone hearing before Administrative Law Judge Richard A. Gilbert (the "ALJ").  (*Id.*).  The ALJ issued a decision on May 4, 2022, finding Plaintiff not disabled through the date last insured, December 31, 2021.  (*Id.* at 46).

Plaintiff appealed to the Appeals Council and the Appeals Council granted Plaintiff's request for review.  (*Id.* at 52).  The Appeals Council vacated the ALJ's decision and remanded the case to the ALJ on July 13, 2022.  (*Id.*).  The Appeals Council directed the ALJ to consider and admit relevant evidence into the record as exhibits "pursuant to HALLEX I-2-6-58 A," give further consideration to whether Plaintiff has a severe mental impairment, and "[g]ive

---

[3] The Administrative Record in this case can be found at ECF No. 7-3.

2

further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations." (*Id.* at 53).

On December 1, 2022, Plaintiff appeared and testified at a supplemental hearing before the ALJ in accordance with the Appeals Council's instructions upon remand. (*Id.* at 74). Plaintiff was represented by counsel at the hearing. (*Id.*). Shelly K. Eike, vocational expert ("VE"), and Robert H. Smiley, M.D., medical expert, appeared at the hearing. (*Id.*). On December 22, 2022, the ALJ again found Plaintiff not disabled. (*Id.* at 89).[4]

At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 12, 2016, through the date he was last insured of December 31, 2021 ("Insured Period"). (ECF No. 7-3 at 76). At Step Two, the ALJ found Plaintiff had the following severe impairments during the Insured Period:

> [L]eft hand osteoarthritis and ankylosis, degenerative arthritis, bilateral shoulder rotator cuff tear, lumbar strain, sleep apnea, left foot exostosis, right upper peripheral neuropathy, tinnitus, chondromalacia (of the right knee), right knee meniscus repair

---

[4] In considering a disability claim, an ALJ must conduct a five-step evaluation that examines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) (citing 20 C.F.R. § 404.1520).

> (and tear), hypertension, hyperlipidemia, vitamin D deficiency, post-traumatic stress disorder ("PTSD"), anxiety disorder, and depressive disorder (20 CFR 404.1520(c)).

(*Id.*).  At Step Three, the ALJ found Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)" during the Insured Period.  (*Id.* at 77).  The ALJ determined Plaintiff had the Residual Functional Capacity ("RFC") during the Insured Period to:

> perform a range of light work as defined in 20 CFR 404.1567(b). More specifically, the claimant can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. He can stand and walk for about six hours in an eight-hour workday, with normal breaks, and sit for about six hours in an eight-hour workday, with normal breaks. He can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He must avoid working around unprotected heights, open flames, and dangerous and/or moving machinery. He is limited to frequent fine and gross manipulation bilaterally. In terms of mental limitations, the claimant can understand, remember, and carryout short and simple instructions; maintain attention and concentration throughout an eight-hour workday on simple tasks; and perform simple, routine, and repetitive tasks. Lastly, he can engage in occasional interaction with coworkers and supervisors, and superficial interaction with the general public.

(*Id.* at 80).  At Step Four, the ALJ found Plaintiff was unable to perform any past relevant work during the Insured Period.  (*Id.* at 87).  Finally, at Step Five, the ALJ found there were jobs that existed in significant numbers in the

4

national economy that Plaintiff could perform during the Insured Period—such as routing clerk, retail marker, and mail clerk—and therefore Plaintiff was not disabled as defined under the Social Security Act during the Insured Period. (*Id.* at 88–89).

Plaintiff appealed again to the Appeals Council and the Appeals Council denied Plaintiff's request for review on March 17, 2023. (*Id.* at 2). Thus, the ALJ's decision represents the Commissioner's final decision in the case. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

## II.   Legal Standard

The court's review of a final decision of the Commissioner on a Social Security disability claim is exceedingly deferential. *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "[R]eview of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). When the Commissioner's decision is reached by applying improper legal standards, the decision is not supported by substantial evidence. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes

'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)).  "'Any findings of fact by the Commissioner which are supported by substantial evidence are conclusive.'"  *Heck v. Colvin*, 674 F. App'x 411, 413 (5th Cir. 2017) (quoting *Taylor*, 706 F.3d at 602).

Even so, judicial review must not be "so obsequious as to be meaningless."  *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quotations omitted).  The substantial evidence standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings.  *Singletary*, 798 F.2d at 822–23; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).  Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings.  *Singletary*, 798 F.2d at 823.  The court "'may not reweigh the evidence . . . , nor try the issues *de novo*, nor substitute [its] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.'"  *Johnson v. Colvin*, 595 F. App'x 443, 444 (5th Cir. 2015) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)).

### III.    Discussion

Plaintiff asserts five points of error.  Plaintiff argues: (1) the ALJ failed to properly assess medical evidence in determining Plaintiff's RFC; (2) the ALJ did not fulfill his duty to develop the record; (3) the ALJ did not perform a proper subjective symptom analysis; (4) the ALJ did not properly explain why Plaintiff did not satisfy certain Listings; and (5) substantial evidence does not support the ALJ's RFC assessment for limited light work.  (*See* ECF No. 14).  The Commissioner rebuts each of Plaintiff's points and contends the ALJ's decision is supported by substantial evidence.  (*See* ECF Nos. 13, 15).

### A.    Medical Evidence

Plaintiff argues the ALJ did not properly consider the supportability and consistency of the medical opinions of Dr. Namrata Dass ("Dr. Dass"), state agency medical consultants ("SAMC"), Dr. Nema Uwaydah ("Dr. Uwaydah"), and Dr. Victor Hirsch ("Dr. Hirsch").[5]  (ECF No. 14 at 10–14).  Further, Plaintiff argues the ALJ did not properly consider Dr. Omar Dave's ("Dr. Dave") medical notes and Veterans Administration ("VA") records.  (*Id.* at 14–15).

For claims filed on or after March 27, 2017, the Social Security Administration requires ALJs to explain how they evaluate a medical opinion's

---

[5] Plaintiff refers to Dr. Hirsch as "Dr. Hirsch" and "Dr. Hirsh." To be consistent with the administrative record and medical evidence, the Court will refer to him as "Dr. Hirsch."

persuasiveness. *See Shugart v. Kijakazi*, No. 3:21-cv-00007, 2022 WL 912777, at *3 (S.D. Tex. Mar. 29, 2022) (citing 20 C.F.R. §§ 404.1520c, 416.920c). "In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) 'other factors that tend to support or contradict' the opinion." *Id.* (citing and quoting 20 C.F.R. § 404.1520c(c)). Among those factors, the most important are supportability and consistency.[6]  *Id.* § 404.1520c(b)(2); *see also Pearson v. Comm'r of Soc. Sec.*, No. 1:20-cv-166, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021), *report and recommendation adopted*, 2021 WL 3663073 (S.D. Miss. Aug. 18, 2021) (explaining that a "sufficient explanation of the supportability and consistency of medical opinions is . . . a critical portion of the analysis."). Because supportability and consistency are the two most important factors, the regulations state that an ALJ "will explain how [they] considered supportability and consistency factors for a medical source's

---

[6]  "Supportability" focuses on how well the medical evidence and supporting explanations given by the medical provider support the provider's opinion. *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). "Consistency" is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *See* 20 C.F.R. § 404.1520c(c)(2).

medical opinions or prior administrative medical findings in [their] determination or decision." 20 C.F.R. § 404.1520c(b)(2) (emphasis added).

When analyzing the sufficiency of an ALJ's explanation, courts have required that "there be a discernible 'logic bridge' between the evidence and the ALJ's persuasiveness finding." *Pearson*, 2021 WL 3708047, at *5 (collecting cases). "A generic statement or summary that a medical provider's opinion is inconsistent with the record as a whole" is insufficient. *Rodriguez v. Kijakazi*, No. 4:21-cv-02087, 2022 WL 18396335, at *4 (S.D. Tex. Dec. 15, 2022), *report and recommendation adopted sub nom. Rodriguez v. Comm'r of Soc. Sec.*, No. 4:21-cv-02087, 2023 WL 2695117 (S.D. Tex. Mar. 27, 2023). "At a minimum, an ALJ's persuasiveness explanation should enable the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence." *Ramirez v. Kijakazi*, No. 4:21-cv-03780, 2023 WL 1456786, at *3 (S.D. Tex. Feb. 1, 2023), *report and recommendation adopted*, No. 4:21-cv-03780, 2023 WL 2145541 (S.D. Tex. Feb. 21, 2023). Without guidance from the ALJ, the reviewing court can only speculate about their reasons for finding an opinion unpersuasive. *Ramirez v. Saul*, No. 20-cv-00457, 2021 WL 2269473, at *6 (W.D. Tex. June 3, 2021); *Pearson*, 2021 WL 3708047, at *5.

### 1.    Dr. Dass

Here, the ALJ provides a summary of Dr. Dass' findings that Plaintiff "has limitations in standing, reaching, grasping, and walking." (ECF No. 7-3 at 85). Further, the ALJ explains,

> during the clinical examination Dr. Dass performed, the claimant exhibited a normal, unassisted gait; full motor strength in all extremities (except slightly reduced (4-/5) grip strength in the right hand; intact sensation; normal reflexes; normal fine and gross manipulation; and except with regards to his bilateral shoulders and certain fingers, full range of motion (Exhibit C5F/3-5). In addition, the claimant has exhibited no more than mild to moderate clinical deficits during other physical examinations, which is consistent with the clinical deficits he exhibited during Dr. Dass' clinical examination.

(*Id.*). The ALJ ultimately found Dr. Dass' assessment unpersuasive because Dr. Dass "did not specify or quantify the type of limitations she assessed, which seriously diminishes the utility and vocational relevance of her medical opinion." (*Id.*).

In assessing consistency, the ALJ noted "Dr. Dass' medical opinion—that the claimant has limitations in his physical functioning—is, therefore, consistent with the medical evidence." *Id.* However, in discussing the supportability of Dr. Dass' opinion, the ALJ found "Dr. Dass attempted to support her opinion by alluding to the claimant's available medical history and clinical findings [but], Dr. Dass did not specify or quantify the type of

limitations she assessed." (*Id.*). The ALJ found Dr. Dass' medical opinion "not persuasive" as it was not adequately supported.

Thus, the ALJ provided more than a generic, cursory explanation of his findings. *See Rodriguez*, 2022 WL 18396335, at *4 (finding an ALJ's analysis failed to comply where it did not discuss the supportability of a medical opinion and where it concluded the medical opinion was consistent with the ALJ's own conclusions); *Howen v. Saul*, No. 4:19-cv-4358, 2021 WL 1169331, at *6 (S.D. Tex. Mar. 25, 2021) (describing an ALJ's finding as to a medical opinion as "cursory" where the ALJ wholly failed to articulate how the medical evidence and the doctor's explanations supported the opinion or how consistent the opinion was with other sources). Further, the Court finds that substantial evidence supports the ALJ's evaluation of Dr. Dass. *Ramirez*, 2023 WL 1456786, at *4 (finding substantial evidence where the ALJ properly considered a medical opinion, found it somewhat persuasive, and provided ample explanation for their finding).

## 2.    State Agency Medical Consultants

Plaintiff argues the SAMC "opinions are inconsistent and not supported by Dr. Hirsh['s] medical opinion as well as the VA medical records." (ECF No. 14 at 13). In finding the SAMC medical opinions fairly consistent with the referenced clinical finding, the ALJ assessed Plaintiff "with more restrictive

postural limitations, as well as environmental limitations." (ECF No. 7-3 at

85). The ALJ explained:

> [t]he State agency medical consultants concluded that, despite his
> physical impairments, the claimant could perform work at the
> light level of exertion, with postural limitations less restrictive
> than those described in the above finding (Exhibits C2A/11-14;
> C4A/6-7). In support of their conclusions, the medical consultants
> referenced the claimant's allegations, reported activities of daily
> living, and fairly normal physical examination findings. Moreover,
> their assessments are fairly consistent with the referenced clinical
> findings; however, in view of the mild to moderate pathology in the
> claimant's right knee, and the corresponding clinical deficits he
> has exhibited, among others, the undersigned assessed the
> claimant with more restrictive postural limitations, as well as
> environmental limitations. In view of the claimant's reports of
> dysfunction in his fingers, and the slightly reduced grip strength
> he has exhibited, along with the inability to fully flex certain
> fingers, the undersigned assessed the claimant with manipulative
> limitations.

(*Id.*).

In discussing the supportability of the SAMC opinions, the ALJ

addressed how specific portions of the medical evidence supported the

providers' opinions. (*Id.*). Further, in comparing the evidence with the

opinions to make a consistency finding, the ALJ noted where the evidence

conflicted with the SAMC opinions. (*Id.*). The ALJ ultimately imposed a more

restrictive RFC than the SAMC opined. (*Id.*).

Thus, the ALJ provided more than a generic, cursory explanation of his

findings. *See Rodriguez*, 2022 WL 18396335, at *4 (finding an ALJ's analysis

failed to comply where it did not discuss the supportability of a medical opinion and where it concluded the medical opinion was consistent with the ALJ's own conclusions); *Howen*, 2021 WL 1169331, at *6 (describing an ALJ's finding as to a medical opinion as "cursory" where the ALJ wholly failed to articulate how the medical evidence and the doctor's explanations supported the opinion or how consistent the opinion was with other sources).

To the extent Plaintiff argues that the SAMC opinions are inconsistent and not supported by Dr. Hirsch's medical opinions or the VA medical records, the Court "'may not reweigh the evidence . . . , nor try the issues de novo, nor substitute [its] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.'" *Johnson*, 595 F. App'x at 444 (quoting *Harrell*, 862 F.2d at 475 (5th Cir. 1988)). Instead, the Court only reviews whether substantial evidence supports the ALJ's determination. *See Barnes v. Astrue*, No. 07-cv-4377, 2008 WL 5348225, at *11 (S.D. Tex. Dec. 22, 2008) ("The issue is not how much evidence supports a finding of disability, but, rather, whether substantial evidence supports the ALJ's finding that Plaintiff was not disabled."). A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the ALJ's decision. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). Accordingly, the Court finds

13

substantial evidence supports the ALJ's evaluation of the SAMC. *Ramirez*, 2023 WL 1456786, at *4 (finding substantial evidence where the ALJ properly considered a medical opinion, found it somewhat persuasive, and provided ample explanation for their finding).

### 3.  Dr. Hirsch

In finding Dr. Hirsch's medical opinion not entirely persuasive, the ALJ provided the following explanation:

> Dr. Hirsch opined that the claimant has difficulty completing activities in a timely manner and providing consistent effort in daily activities, with no reported improvements (Exhibit C7F/5). Dr. Hirsch further opined that the claimant could understand the meaning of filing for benefits, but would need help in managing his benefit payments, if granted. Dr. Hirsch's medical opinion is not well-supported by objective findings from the clinical examination he or his office performed. The claimant demonstrated some abnormal mood or affect and fluctuating concentration, but otherwise, fairly normal clinical findings (Exhibit C7F/3-4). He exhibited normal persistence and attention, fairly normal speech, cooperative behavior, normal eye contact, normal psychomotor activity, normal and rational thought processes, and full orientation, with no major deficits in memory, concentration/attention, judgment, or insight. It is, therefore, unclear the basis on which he found that the claimant could not manage his own benefit payments. Dr. Hirsch's basis for concluding that the claimant has difficulty providing consistent effort and timely completing activities is also not entirely clear, although the claimant did demonstrate some fluctuating concentration. Moreover, Dr. Hirsch's medical opinion does not appear entirely consistent with the other primarily normal mental status and psychiatric findings in the record. More specifically, while the claimant has exhibited some abnormal mood and affect, he has generally demonstrated no other significant abnormalities

in mental functioning. Therefore, as Dr. Hirsch's medical opinion is not well-supported by findings from his own examination, nor entirely consistent with other clinical findings in the record, the medical opinion of Dr. Hirsch is not entirely persuasive.

(ECF No. 7-3 at 86–87).

In discussing the supportability of Dr. Hirsch's opinion, the ALJ addressed how specific portions of the medical evidence did not support the provider's opinion. (*Id.*). Further, in comparing the evidence with the opinion to make a consistency finding, the ALJ noted where the evidence conflicted with Dr. Hirsch's opinion. (*Id.*).

Thus, the ALJ provided more than a generic, cursory explanation of his findings. *See Rodriguez*, 2022 WL 18396335, at *4 (finding an ALJ's analysis failed to comply where it did not discuss the supportability of a medical opinion and where it concluded the medical opinion was consistent with the ALJ's own conclusions); *Howen*, 2021 WL 1169331, at *6 (describing an ALJ's finding as to a medical opinion as "cursory" where the ALJ wholly failed to articulate how the medical evidence and the doctor's explanations supported the opinion or how consistent the opinion was with other sources).

Insofar as Plaintiff disagrees with the ALJ's findings regarding Dr. Hirsch's medical opinions or finds the ALJ's decision to be inadequate, "the ALJ is not always required to do an exhaustive point-by-point discussion" of

15

each piece of evidence at every step. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *see Charland v. Astrue*, No. 08-cv-1072, 2010 WL 624047, at *3 (N.D. Tex. Feb. 22, 2010) ("The ALJ is not statutorily or judicially obligated to explicitly list all the evidence he or she takes into account[.]").  Further, "[t]he fact that the ALJ cited certain evidence that he felt supported his decision does not mean that he failed to consider all of the other evidence in the record." *See Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010); *see also Todd C. v. Saul*, No. 4:19-cv-1811, 2021 WL 2651166, at *12 (S.D. Tex. June 28, 2021) ("An ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it.").  The Court notes the ALJ states he "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c." (ECF No. 7-3 at 80).

Accordingly, the Court finds that substantial evidence supports the ALJ's evaluation of Dr. Hirsch. *Ramirez*, 2023 WL 1456786, at *4 (finding substantial evidence where the ALJ properly considered a medical opinion, found it somewhat persuasive, and provided ample explanation for their finding).

### 4.    Dr. Dave's Medical Notes

Plaintiff argues that although Dr. Dave did not submit a medical opinion, the ALJ failed to consider Dr. Dave's medical notes documenting limitations with respect to Plaintiff's knee.  (ECF No. 14 at 14–15).

Plaintiff argues the ALJ failed to consider the range of motion ("ROM") in his knee with respect to Dr. Dave's medical notes.  (ECF No. 14 at 15). However, the ALJ explains,

> Throughout the remainder of 2021, and in 2022, [Plaintiff] continued to demonstrate primarily normal findings, except for some tenderness and limited range of motion in the right knee, positive McMurray's findings, and slightly reduced (4/5) strength in the right knee (Exhibits C8F/23-24; C10F/132; C12F/5-6, 11-12, 18; C20F/82-83; C27F/16-17). He demonstrated (again) a normal gait, normal sensation, and good or full strength in all his extremities (except for the earlier referenced slightly reduced strength in his right knee). An October 2021, MRI study of [Plaintiff]'s right lower extremity revealed moderate pathology; more specifically, evidence of a high-grade sprain; non-acute partial-thickness tears in the medial meniscus; a tiny flap-type tear and partial thickness tear in the lateral meniscus; high-grade chondral thinning; moderate degenerative changes in the lateral compartment; mild degenerative changes in the medial compartment; mild quadriceps tendinosis; and a small effusion (Exhibit C12F/64-65).

(ECF No. 7-3 at 82–83).  Further, the ALJ notes Plaintiff received medication injections in the right knee and attended pharmacological therapy, although he exhibited normal, unassisted gait.  (*Id.* at 82).  The ALJ provides a lengthy summary of his RFC finding regarding Plaintiff's knee issues and "[t]he fact

that the ALJ cited certain evidence that he felt supported his decision does not mean that he failed to consider all of the other evidence in the record." *See Brunson*, 387 F. App'x at 461; *see also Todd C.*, 2021 WL 2651166, at *12. Moreover, the Court "'may not reweigh the evidence . . . , nor try the issues de novo, nor substitute [its] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.'" *Johnson*, 595 F. App'x at 444 (quoting *Harrell*, 862 F.2d at 475).

Accordingly, the Court finds that substantial evidence supports the ALJ's evaluation of Plaintiff's RFC regarding the ROM of his knee. *Ramirez*, 2023 WL 1456786, at *4 (finding substantial evidence where the ALJ properly considered a medical opinion, found it somewhat persuasive, and provided ample explanation for their finding).

### 5.    VA Records

Plaintiff argues the ALJ failed to discuss the severe major depressive disorder ("MDD") diagnosis as well as the severe post-traumatic stress disorder checklist score that was documented in the VA medical records. (ECF No. 14 at 16).

"'A VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a certain amount of weight and must be

18

considered by the ALJ.'" *Welch v. Barnhart*, 337 F. Supp. 2d 929, 935 (S.D. Tex. 2004) (quoting *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)). "ALJ's need not give 'great weight' to a VA disability determination *if* the ALJ adequately explains the valid reasons for not doing so, as the regulations for disability status differ between the SSA and the VA." *Id.* (emphasis in original) "An ALJ may ultimately disagree with the findings of the VA if the findings and the underlying evidence are considered." *Id.*

Here, the ALJ "recognizes [Plaintiff] has been awarded disability benefits from the" VA and acknowledges the Social Security Administration is not bound by decisions from the VA. (ECF No. 7-3 at 87). The ALJ states he has "evaluated all the evidence that may have a bearing on [Plaintiff]'s claim for disability benefits." (*Id.*). Importantly, the ALJ does not state that he rejects the VA findings or that he gives it little weight, rather he states that he has "evaluated all the evidence." (*Id.*). Because the ALJ does not assert that he disagrees with the evidence, he need not provide such reasoning. Additionally, the ALJ cites to VA records throughout his decision, showing that he did evaluate the VA records. For instance, the VA records are attached as Exhibits, including but not limited to, C3F, C4F, C8F, C9F, C10F, C11F, C20F, and C22F. (*See* ECF No. 7-2 at 3–4). These Exhibits are referenced and relied

upon by the ALJ numerous times throughout his decision. (ECF No. 7-3 at 77–83).

Thus, Plaintiff's contention that the "ALJ failed to discuss the severe MDD diagnosis as well as the severe [post-traumatic stress disorder checklist] score that was well documented in the VA medical records," is not fully supported by the ALJ's decision. (ECF No. 14 at 16). Even so, as previously established, "the ALJ is not always required to do an exhaustive point-by-point discussion" of each piece of evidence at every step. *Audler*, 501 F.3d at 448; *see Charland*, 2010 WL 624047, at *3 ("The ALJ is not statutorily or judicially obligated to explicitly list all the evidence he or she takes into account[.]"). Further, "[t]he fact that the ALJ cited certain evidence that he felt supported his decision does not mean that he failed to consider all of the other evidence in the record." *See Brunson*, 387 F. App'x at 461; *see also Todd C.*, 2021 WL 2651166, at *12 ("An ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it."). As such, the ALJ properly assessed the VA records in determining Plaintiff's RFC.

### 6. Dr. Uwaydah

Plaintiff argues the ALJ erred in finding Dr. Uwaydah's opinion inconsistent with medical records in violation of 20 C.F.R. § 404.1520c. (ECF

No. 14 at 17).  In finding Dr. Uwaydah's medical opinion not persuasive, the

ALJ provided the following explanation:

> Dr. Uwaydah opined that the claimant could never lift or carry
> even 10 pounds, never perform manipulative or reaching activities,
> never operate foot controls, and never perform postural maneuvers
> (Exhibits C21F/1, 3-4; C23F; C24F). Dr. Uwaydah further opined
> that the claimant could sit, stand, and walk for no more than one
> hour each during an eight-hour workday; she also assessed the
> claimant with very serious environmental limitations (Exhibit
> C21F/2; C23F; C24F). Dr. Uwaydah also opined that the claimant
> had an impaired ability to communicate, among other limitations
> (Exhibits C21F/4; C23F; C24F). Ultimately, Dr. Uwaydah
> concluded that the claimant could not work (Exhibits C21F/2;
> C23F; C24F). In an effort to support h[er] medical opinion, Dr.
> Uwaydah often indicated (in h[er] written statement): "see medical
> records" (Exhibits C21F; C23F; C24F). However, her conclusions
> and assessed limitations are starkly inconsistent with the
> voluminous medical evidence in the longitudinal record. For
> instance, Dr. Uwaydah opines that the claimant cannot lift 10
> pounds; yet, he has generally demonstrated full or near-full
> strength in all extremities. Dr. Uwaydah opines that the claimant
> could never perform manipulative activities; however, he has
> consistently demonstrated full or good strength (except for slight
> deficits) and, during his May 2021 consultative examination,
> demonstrated normal fine and gross manipulation. Dr. Uwaydah
> opines that the claimant can never operate foot controls or sit,
> stand, or walk for more than hour; however, he has consistently
> and repeatedly demonstrated a normal, unassisted gait and no
> more than mild to moderate pathology in his musculoskeletal
> system. He has also consistently demonstrated intact sensation.
> Dr. Uwaydah further opines that the claimant is impaired in his
> ability to communicate; however, during his numerous mental
> status and psychiatric examinations, the claimant has
> demonstrated fairly normal speech. In short, Dr. Uwaydah's
> medical opinion is not supported by, and is in fact, starkly
> inconsistent with, the medical evidence in the claimant's extensive
> record, and as such, is not persuasive.

(ECF No. 7-3 at 85–86).

In discussing the supportability of Dr. Uwaydah's opinion, the ALJ addressed how specific portions of the medical evidence did not support the provider's opinion. (*Id.*). Further, in comparing the evidence with the opinion to make a consistency finding, the ALJ noted where the evidence conflicted with Dr. Uwaydah's opinion. (*Id.*).

Thus, the ALJ provided more than a generic, cursory explanation of his findings. *See Rodriguez*, 2022 WL 18396335, at *4 (finding an ALJ's analysis failed to comply where it did not discuss the supportability of a medical opinion and where it concluded the medical opinion was consistent with the ALJ's own conclusions); *Howen*, 2021 WL 1169331, at *6 (describing an ALJ's finding as to a medical opinion as "cursory" where the ALJ wholly failed to articulate how the medical evidence and the doctor's explanations supported the opinion or how consistent the opinion was with other sources).

"The fact that the ALJ cited certain evidence that he felt supported his decision does not mean that he failed to consider all of the other evidence in the record." *See Brunson*, 387 F. App'x at 461 (5th Cir. 2010); *see also Todd C.*, 2021 WL 2651166, at *12. The Court notes that the ALJ states, for example, he "considered the medical opinion(s) and prior administrative medical

finding(s) in accordance with the requirements of 20 CFR 404.1520c." (ECF No. 7-3 at 80). Moreover, the Court "'may not reweigh the evidence . . . , nor try the issues de novo, nor substitute [its] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.'" *Johnson*, 595 F. App'x at 444 (quoting *Harrell*, 862 F.2d at 475 (5th Cir. 1988)).

Accordingly, the Court finds that substantial evidence supports the ALJ's evaluation of Dr. Uwaydah. *Ramirez*, 2023 WL 1456786, at *4 (finding substantial evidence where the ALJ properly considered a medical opinion, found it somewhat persuasive, and provided ample explanation for their finding).

### B.    Duty to Develop the Record[7]

First, Plaintiff claims the ALJ "cherrypicked" mental examinations to conclude Plaintiff is cooperative, has normal insight, and normal judgment. (ECF No. 14 at 19).

"A hallmark of improper cherry-picking is when the ALJ's decision presents a skewed, one-sided, and incomplete depiction of the contents of the administrative record." *Yarbor v. Comm'r of Soc. Sec.*, No. 4:23-cv-219, 2024

---

[7] While Plaintiff cites to case law pertaining to the ALJ's duty to develop the record, the substance of his argument relates to the ALJ "cherry picking" and ignoring medical documents. (ECF No. 14 at 19). As such, the Court construes Plaintiff's argument under this section to be challenging the ALJ's assessment of the medical record.

WL 3217416, at *4 (N.D. Miss. June 27, 2024) (citing *Loza v. Apfel*, 219 F.3d 378 (5th Cir. 2000)).  "But where the decision fairly summarizes the evidence on both sides and explains the weight given to conflicting evidence, the ALJ is properly executing the decision-making authority entrusted to the agency." *Id.* "That some evidence was credited, and other evidence rejected is not indicative of improper cherry picking." *Id.*

Plaintiff claims the ALJ "cherrypicked" mental examinations to conclude Plaintiff is cooperative, has normal insight, and normal judgment.  (ECF No. 14 at 19).  However, the ALJ notes that from 2016 to 2019, Plaintiff "repeatedly demonstrated cooperative behavior, logical and goal-directed thought processes, intact cognition and/or memory, intact fund of knowledge, intact attention and concentration, and good or intact judgment and insight."  (ECF No. 7-3 at 83).  Further, the ALJ notes from 2020 to 2022, Plaintiff "demonstrated normal persistence and attention, fairly normal speech, cooperative behavior, normal eye contact, normal psychomotor activity, normal and rational thought processes, and full orientation, with no significant deficits in memory, judgment, or insight."  (*Id.*).  Moreover, the ALJ acknowledges Plaintiff showed some "abnormal mood or affect and fluctuating concentration, but otherwise, fairly normal clinical findings (Exhibit C7F/3-4). He exhibited normal persistence and attention, fairly normal speech, cooperative behavior,

24

normal eye contact, normal psychomotor activity, normal and rational thought processes, and full orientation, with no major deficits in memory, concentration/attention, judgment, or insight." (*Id.* at 87).

With respect to Plaintiff's mental limitations, the ALJ "limited [Plaintiff] to performing a range of simple work, which is consistent with the abnormal mood he has exhibited, and limited social interaction, consistent with his reports of PTSD-related symptoms." (ECF No. 7-3 at 84). Further, the ALJ considered Plaintiff "reported experiencing flashbacks and other symptoms associated with PTSD (Hearing Testimony). That being said, [Plaintiff] has repeatedly been noted as cooperative. . . . Considering all these things together, the claimant is moderately limited in this area of mental functioning." (*Id.* at 79). The ALJ also considered Plaintiff was diagnosed with PTSD, depression, and anxiety, in which Plaintiff "has undergone psychotherapy and pharmacological therapy [and w]hile he has continued to report psychological symptoms, [Plaintiff] has demonstrated primarily normal mental status or psychiatric findings throughout the relevant period." (*Id.* at 83).

While the ALJ did not address all the evidence, the decision fairly represents the content of the administrative record and explains which evidence is consistent with the record as a whole. Also, instead of ignoring conflicting evidence, the ALJ acknowledged and analyzed the conflicting

evidence and resolved such conflicts in the record. What Plaintiff claims to be "cherrypicked" evidence is the ALJ deciphering the record and determining Plaintiff's limitations based on the medical records, the medical opinions, Plaintiff's testimony, and his daily activities. *See Brian K. L. v. Comm'r of Soc. Sec.*, No. 4:20-cv-2810, 2022 WL 902641, at *5 (S.D. Tex. Mar. 28, 2022).

Second, Plaintiff argues the ALJ ignored VA medical records and Dr. Dave's notes documenting Plaintiff's chronic pain. (ECF No. 14 at 19). However, the ALJ considered Plaintiff's chronic pain in determining the RFC. For instance, the ALJ considered Plaintiff's testimony regarding his limited ROM and shoulder pain. (ECF No 7-3 at 81). The ALJ also considered that Plaintiff "exhibit[ed] mild tenderness in the bilateral shoulders; minimal tenderness in the bilateral knees" but Plaintiff "continuously demonstrated normal, unassisted gait." (*Id.* at 81–82). Again, in "2019, [Plaintiff] exhibited some tenderness and slightly reduced strength (4/5) in the right shoulder; tenderness, crepitus, and painful range of motion in the bilateral knees; and right knee swelling (Exhibits C2F/6-7, 10, 13, 16-17; C3F/84; C4F/102; C10F/226; C12F/46, 51, 56, 61; C20F/211; see also Exhibit C2F/3-4)" but still demonstrated normal, unassisted gait and normal sensation. (*Id.* at 82). The ALJ considered "[r]adiographic studies of [Plaintiff]'s bilateral shoulders [that] revealed unremarkable findings; and radiographic studies of his knees

revealed no more than mild pathology [and i]n 2020, [Plaintiff] demonstrated bilateral knee tenderness, crepitus, and pain, and some right knee swelling, but otherwise normal physical examination findings."  (*Id.*).

As discussed, "the ALJ is not always required to do an exhaustive point-by-point discussion" of each piece of evidence at every step.  *Audler*, 501 F.3d at 448; *see Charland*, 2010 WL 624047, at *3 ("The ALJ is not statutorily or judicially obligated to explicitly list all the evidence he or she takes into account[.]").  Further, "[t]he fact that the ALJ cited certain evidence that he felt supported his decision does not mean that he failed to consider all of the other evidence in the record."  *See Brunson*, 387 F. App'x at 461; *see also Todd C.*, 2021 WL 2651166, at *12 ("An ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it.").  The Court notes the ALJ states he "has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p."  (ECF No. 7-3 at 80).  Thus, the ALJ has sufficiently considered Plaintiff's mental limitations, PTSD, depression or MDD, and complaints of pain.

## C.     Subjective Complaints

Plaintiff asserts the ALJ did not properly consider his subjective complaints. (ECF No. 14 at 19). First, Plaintiff argues "the ALJ specifically discussed the fact that the [P]laintiff could perform his daily activities but fail[s] to fully assess [P]laintiff's duration and frequency of pain, medication, and treatment." (*Id.*). Further, Plaintiff argues "without supporting medical evidence, the ALJ asserted that because plaintiff took medication, [Plaintiff] could sustain a full 8-hour workday." (*Id.* at 20).

"Social Security Ruling 16-3p provides guidance regarding how the Social Security Administration evaluates 'statements regarding the intensity, persistence, and limiting effect of symptoms in disability claims.'" *Brink v. Comm'r of Soc. Sec.*, No. 1:18-cv-65, 2019 WL 2588503, at *6 (S.D. Miss. May 30, 2019), *report and recommendation adopted*, No. 1:18-cv-65, 2019 WL 2583515 (S.D. Miss. June 24, 2019). "It is well-established law that . . . '[t]he ALJ's findings regarding the debilitating effect of the subjective complaints are entitled to considerable judicial deference.'" *Holland v. Soc. Sec. Admin.*, No. 14-cv-1202, 2015 WL 2341605, at *8 (E.D. La. May 14, 2015) (quoting *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986)). "[T]he ALJ is not required to explicitly discuss all the evidence that supported the decision or that he rejected." *Id.* (citing *Falco v. Shalala*, 27 F.3d 160, 163–64 (5th Cir. 1994)).

28

However, the ALJ considered and cites to Plaintiff's testimony where Plaintiff explains his symptoms. (ECF No. 7-3 at 81). For instance, the ALJ acknowledges that Plaintiff "testified that he experiences limited [ROM] and does not lift his arms over his head because of the pain. He explained that, during a remote surgery on his right shoulder, the surgeon injured a nerve, and as a result, he continues to experience residual pain there (Hearing Testimony)." (*Id.*). Further, after the ALJ considered the evidence, including Plaintiff's testimony regarding his symptoms, he found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 81, 84). The ALJ points to each inconsistency he found with Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms with the record. (*Id.* at 84). For instance, the ALJ states Plaintiff "alleges that he cannot engage in prolonged standing or walking; however, despite his impairments, [Plaintiff] has repeatedly and consistently demonstrated, throughout the relevant period, an unassisted, normal gait. While the record supports the assessment of limitations, [Plaintiff]'s symptoms appear primarily mild to moderate in severity." (*Id.*).

To the extent Plaintiff argues the ALJ did not consider Plaintiff's subjective symptoms regarding pain, the Court disagrees. The ALJ references

Plaintiff's complaints of pain throughout his decision.  For example, the ALJ states, Plaintiff "testified that he experiences limited [ROM] and does not lift his arms over his head because of the *pain*," Plaintiff "explained that, during a remote surgery on his right shoulder, the surgeon injured a nerve, and as a result, he continues to experience residual *pain* there," and Plaintiff "further relayed that he cannot move one of the fingers on his left hand, due to a remote injury, and experiences *pain* in both hands due to arthritis."  (*Id.* at 81) (emphasis added).  However, the ALJ did not find these complaints of pain fully consistent with the medical record because Plaintiff "demonstrated normal fine and gross manipulation; full motor strength in all extremities; full grip strength in the left hand; intact sensation; and normal reflexes."  (*Id.* at 82); *see Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988) (finding the ALJ supported his decision that plaintiff's testimony regarding the severity of pain not credible because he pointed to conflicts between plaintiff's description of physical symptoms and descriptions in medical records, where "several of Hollis' examining physicians specifically noted that despite her arthritis, Hollis has a full range of movement in her extremities").

Moreover, the ALJ considered Plaintiff's medication when determining his RFC.  In the ALJ's decision, he states, Plaintiff "reported experiencing nightmares and flashbacks, and continues to take medications for treatment."

30

(ECF No. 7-3 at 81).    Additionally, Plaintiff "has undergone medication injections in the right knee, as well as pharmacological therapy." (*Id.* at 82). Although Plaintiff argues "the ALJ asserted that because [P]laintiff took medication, [Plaintiff] could sustain a full 8-hour workday," Plaintiff provides no citation to this assertion and the Court is unable to find such a conclusion in the ALJ's opinion.  (ECF No. 14 at 20).  On the contrary, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," which includes "clinical and diagnostic findings." (ECF No. 7-3 at 81, 87).  The ALJ also "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (*Id.* at 80).

The ALJ considered Plaintiff's subjective symptoms, the intensity, persistence, and limiting effects of his symptoms, and provided reasons for why he did not find Plaintiff's subjective symptoms entirely consistent with the record.  Thus, substantial evidence supports the ALJ's decision.  *See Holland v. Soc. Sec. Admin.*, No. 14-cv-1202, 2015 WL 2341605, at *10 (E.D. La. May 14, 2015) ("And while the ALJ found that plaintiff's medically-determinable impairments could reasonably be expected to cause the alleged symptoms, his

statements concerning the intensity, persistence and limiting effects of his symptoms lack support in the record" and thus, "substantial evidence supports the ALJ's credibility determination.").

### D.    Listed Impairments

Plaintiff argues his mental and physical impairments meet the criteria for Listings 12.15, 1.15, 1.18, and thus, the ALJ erred.  (ECF No. 14 at 20–22).

### 1.    Listing 12.15

Plaintiff claims the ALJ did not fully assess his PTSD with respect to Listing 12.15 for trauma and stressor-related disorders.  (*Id.* at 20).  However, Plaintiff simply asserts "based upon the objective medical evidence the [P]laintiff's mental impairment of PTSD meets or is equivalent to the criteria of mental impairment 12.15" without explaining which medical evidence he is referring to or why it meets the criteria for Listing 12.15.  (*Id.* at 22).  Plaintiff merely recites the requirements to meet or equal Listing 12.15.  (*Id.* at 20–21).  "[The briefing] includes no citations to evidence in the record nor any caselaw to support this contention.  [Thus,] [t]his argument is deemed waived, as it is not enough to mention a possible argument in the most skeletal way, leaving the Court to do considerable work." *Daigle v. Kijakazi*, No. 21-cv-764, 2022 WL 16848786, at *7 n.3 (E.D. La. July 8, 2022), *report and recommendation adopted sub nom. Daigle v. Saul*, No. 21-cv-764, 2022 WL 16848785 (E.D. La.

Oct. 14, 2022), *aff'd sub nom. Daigle v. Kijakazi*, No. 22-30721, 2023 WL 4501865 (5th Cir. July 12, 2023) (citing *Cinel v. Connick*, 15 F.2d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim."))

### 2.    Listing 1.15

Plaintiff claims the ALJ failed to discuss the severe symptoms of MDD, and thus, Listing 1.15 is not supported by substantial evidence. (ECF No. 14 at 21). However, Listing 1.15 "concerns disorders of the skeletal spine resulting in compromise of a nerve root." *MacGregor v. Kijakazi*, No. 4:22-cv-3866, 2023 WL 11857623, at *4 (S.D. Tex. Dec. 26, 2023).

The ALJ found Plaintiff's spinal disorder does not satisfy the criteria of Listing 1.15. (ECF No. 7-3 at 78). Despite Plaintiff's argument to the contrary, it is unclear to the Court how severe symptoms of MDD relate to Listing 1.15 because Listing 1.15 concerns spinal disorders. Additionally, Plaintiff does not explain how severe symptoms of MDD affect his spine. (*See* ECF No. 14). As such, this argument is unavailing.

To the extent Plaintiff intended to argue the ALJ failed to discuss the severe symptoms of MDD with respect to Listing 12.15, Plaintiff's argument also fails. Specifically, Plaintiff argues the ALJ did not consider his "severe anxiety, insomnia, and flashbacks" and that he "had severe anxiety and twice

a week panic attacks that would affect his concentration as well as his ability to socially interact." (ECF No. 14 at 21). The ALJ provides a lengthy discussion on Plaintiff's mental impairments as required by Listings 12.04, 12.06, and 12.15. (ECF No. 7-3 at 78–80). The ALJ considered Paragraph B and Paragraph C criteria. (*Id.*). The ALJ specifically referenced Plaintiff's reports of "experiencing flashbacks and other symptoms associated with PTSD (Hearing Testimony)" when determining plaintiff had a moderate limitation in his ability to interact with others. (*Id.* at 79). Further, the ALJ found Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace because "he has exhibited an anxious, depressed, or abnormal mood, and during his June 2021 consultative examination, demonstrated some fluctuation in concentration." (*Id.*).

Thus, Plaintiff's argument that the ALJ did not consider the symptoms of MDD, including anxiety, depression, and flashbacks, is contrary to the ALJ's decision as identified above. Plaintiff also fails to provide case law or authority that supports his contention. (ECF No. 14 at 21). Moreover, the ALJ need not address every piece of evidence he considered nor does the ALJ need to accept every piece of evidence in the record. *See Brunson*, 387 F. App'x at 461 ("The fact that the ALJ cited certain evidence that he felt supported his decision does not mean that he failed to consider all of the other evidence in the record."); *see*

34

*also Darrin J. v. Comm'r of Soc. Sec.*, No. 5:23-cv-00256, 2024 WL 2000696, at *8 (N.D. Tex. Apr. 5, 2024), *report and recommendation adopted*, No. 5:23-cv-256, 2024 WL 2001584 (N.D. Tex. May 6, 2024) ("The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion, and the Court may not reweigh the evidence or substitute [its] judgment for that of the Commissioner." (quotations omitted)).

### 3.    Listing 1.18

Plaintiff claims objective medical evidence—Dr. Dass' medical opinion, Dr. Dave's medical records, and VA records—of Plaintiff's physical impairments meets the criteria for Listing 1.18.  (ECF No. 14 at 22).

"To meet a listed impairment, the claimant's medical findings, i.e., symptoms, signs, and laboratory findings, must match all those described in the listing for that impairment; an impairment cannot meet a Listing based only on a diagnosis." *Foreman v. Kijakazi*, No. 3:21-cv-03042, 2023 WL 2529746, at *12 (N.D. Tex. Feb. 17, 2023), *report and recommendation adopted*, No. 3:21-cv-03042, 2023 WL 2531490 (N.D. Tex. Mar. 15, 2023) (citing 20 C.F.R. § 404.1525(d).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* (quotations omitted). "The claimant must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Id.* (quotation omitted).

"When a claimant fails to sustain that burden, courts must conclude that substantial evidence supports the ALJ's finding that Listings-level impairments are not present." *Id.* (quotation omitted). "[A] claimant may not establish Listings level severity through subjective testimony." *Lewis v. Barnhart*, 431 F. Supp. 2d 657, 661 (E.D. Tex. 2006).

The ALJ found Plaintiff's spinal disorder does not satisfy the criteria of Listing 1.18 because,

> no medical evidence establishing that the claimant has (1) a documented medical need for a walker, bilateral canes, bilateral crutches, or a wheeled and seated mobility device involving the use of both hands; nor (2) an inability to use at least one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements. [Plaintiff] has consistently demonstrated a normal, unassisted gait and has generally demonstrated full or near-full (that is, only slightly reduced) motor strength in his upper and lower extremities, normal sensation, and normal coordination.

(ECF No. 7-3 at 77–78). The ALJ appears to find Plaintiff does not satisfy the criteria for Listing 1.18 under Paragraph D and cites to record evidence to support his finding. (*Id.*).

Paragraph D of Listing 1.18 requires "documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands," the inability to use "one upper extremity to independently initiate, sustain, and complete work-related

activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand," or "[a]n inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements."   20 C.F.R. pt. 404, subpt. P, app.1, § 1.18(D).

However, Plaintiff only references Paragraph A, Paragraph B, and Paragraph C in his argument that the ALJ's finding is not supported by substantial evidence.   (ECF No. 14 at 22) (referencing the "Paragraphs" as "Groups").   Because the ALJ found Plaintiff did not meet the criteria for Listing 1.18 under Paragraph D, Plaintiff fails to show the ALJ erred in finding Plaintiff did not meet the criteria of Listing 1.18.   *See Foreman*, 2023 WL 2529746, at *12 ("The claimant must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.") (emphasis added).

### E.   RFC

Plaintiff argues the ALJ's RFC analysis is not supported by objective medical evidence.   (ECF No. 14 at 25).   First, Plaintiff claims the ALJ's determination that Plaintiff can perform light work or sedentary work is not

supported because the record shows Plaintiff cannot fully bend or squat, severe pain in the knees affects his ability to stand and walk, he has limited shoulder ROM, and he cannot perform fine finger manipulation, grasping, and handling. (*Id.* at 23–24). Although Plaintiff makes these assertions, he fails to cite the record, making it impossible for the Court to identify the records to which he refers. However, the ALJ notes that even though Plaintiff has been found to have physical difficulties regarding his knees, shoulder, and fingers, Plaintiff has consistently been found to have normal, unassisted gait, normal fine and gross manipulation, full motor strength in all extremities, full grip strength in the left hand, intact sensation, and normal reflexes. (ECF No. 7-3 at 82–86).

"[I]t is the ALJ's duty to interpret the medical evidence along with other relevant evidence to determine a claimant's capacity for work." *Jones v. Kijakazi*, 625 F. Supp. 3d 549, 553 (S.D. Miss. 2022). Here, the ALJ weighed the evidence, and determined Plaintiff's ability to work from medical sources in the record. Thus, substantial evidence supports the ALJ's RFC determination regarding Plaintiff's knee, shoulder, and finger conditions. *See Steven K. v. Kijakazi*, No. 3:20-cv-01655, 2022 WL 1056920 (N.D. Tex. Jan. 19, 2022) ("ALJ's [Drug Addiction or Alcoholism ("DAA")] determination is supported by substantial evidence because medical evidence from an

acceptable medical source supports it.  Additionally, the ALJ generally cited the medical evidence in support of her DAA determination.").

Second, Plaintiff argues the ALJ did not consider his chronic pain as a stressor for his depression when determining his mental limitations.  (ECF No. 14 at 24).  However, the ALJ addressed Plaintiff's mental limitations in his RFC determination.   (ECF No. 7-3 at 83).   The ALJ acknowledges that Plaintiff's mental condition limits his ability to work, but that Plaintiff "has demonstrated primarily normal mental status or psychiatric findings throughout the relevant period." (*Id.*).  The ALJ assessed Plaintiff's medical history from 2016 to 2022, reviewed medical records, and considered medical opinions in determining Plaintiff's mental limitations.  (*Id.* at 83–87).  The ALJ need not address every piece of evidence he considered nor does the ALJ need to accept every piece of evidence in the record.  *See Brunson*, 387 F. App'x at 461.  As such, the ALJ did not err in determining Plaintiff's RFC regarding his mental limitations.

Third, Plaintiff argues his ROM limitations were not incorporated in the hypothetical presented to the VE.  (ECF No. 14 at 24).  However, "[a]n ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE, if the ALJ did not find the alleged limitations to be supported in the record." *Roberts v. Colvin*, 946 F. Supp. 2d 646, 662 (S.D. Tex.

2013); *see Gardner v. Massanari*, 264 F.3d 1140, 2001 WL 822457, *2 (5th Cir. June 18, 2001) ("The hypothetical question that an ALJ poses to a VE need only incorporate the disabilities that the ALJ recognizes."). To the extent Plaintiff wished to challenge the ALJ's hypothetical question at the hearing, his counsel had an opportunity at the hearing to cross-examine the VE on this point but did not do so. *See Carey v. Apfel*, 230 F.3d 131, 146–47 (5th Cir. 2000) ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.").

Here, the ALJ included a ROM limitation in his hypothetical to the VE—frequent fine and gross manipulation bilaterally. (ECF No. 7-3 at 289). The ALJ presented a hypothetical that included the RFC limitations he found credible based on the evidence, as required. (*Id.* at 289–90). Even so, Plaintiff does not state which ROM limitations he believes should have been included in the hypothetical. (*See* ECF No. 14 at 24). Further, Plaintiff was represented by counsel at the hearing, in which counsel cross-examined the VE, but never challenged the hypothetical with respect to Plaintiff's ROM. As such, the ALJ did not err in the hypothetical presented to the VE.

40

Finally, Plaintiff argues that the ALJ did not properly account for Plaintiff's complaints of chronic pain in the RFC determination. The Court has already addressed this issue extensively throughout this Memorandum and Recommendation and has found the ALJ's decision to be supported by substantial evidence with respect to Plaintiff's complaints of chronic pain. Thus, the ALJ's RFC determination is supported by substantial evidence.

## IV.    Conclusion

Based on the foregoing, the Court **RECOMMENDS** Commissioner's Motion for Summary Judgment (ECF No. 12) be **GRANTED** and Plaintiff's Motion for Summary Judgment (ECF No. 14) be **DENIED**. The Court **FURTHER RECOMMENDS** the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED WITH PREJUDICE**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**SIGNED** in Houston, Texas on August 21, 2024.

Richard W. Bennett
United States Magistrate Judge